JOURNAL ENTRY AND OPINION
Defendant-appellant Jack M. Dempsey appeals from the denial of his petition for post-conviction relief arising from his convictions following a jury trial for aggravated arson (R.C.2909.02) and burglary (R.C. 2911.12). Defendant contends that the trial court erred in not holding an evidentiary hearing because his petition asserted that evidence outside the record established ineffective assistance of counsel; the State's failure to timely disclose exculpatory materials prejudiced him; and the trial court should have granted a continuance of the trial. We find no reversible error and affirm.
This case arose out of a fire purposely set at a commercial/residential building at 11202 Lorain Avenue, Cleveland, Ohio around 11:00 p.m. on March 11, 1995. Thomas Padmonick, living upstairs with his two daughters, smelled smoke, called 911 and evacuated the building. The Cleveland Fire Department responded and extinguished the blaze.
Arson investigators were called in. They discovered broken glass in the back door of the building and two points of origin for the fire confirming suspicions that the fire was deliberately set.
While fire fighters were searching the basement for the electrical shut-off they found defendant in the basement lying unconscious on his stomach with his shirt pulled over his head. After CPR, defendant was taken to the hospital and was eventually treated for severe smoke inhalation and diagnosed with retrograde amnesia causing him to forget the events surrounding the fire.
Defendant claimed at trial that on the night of the fire he went to the Dollhouse, a strip club, ordered a non-alcoholic beer and passed out after drinking same. Defendant claims he has no recollection after passing out, including how he ended up in a burning building. However, he argues that Steve Gallegos, a bouncer at the Dollhouse, drugged him and then placed him in the basement of the building while setting the fire.
Steve Gallegos was the ex-boyfriend of Jean Tomusko, a friend of defendant's. Ms. Tomusko had recently discontinued her relationship with Mr. Gallegos after she discovered that he had been working at the Dollhouse and after he asked her daughter Lisa to be a dancer. Defendant allegedly went to the Dollhouse on the night of the fire to see if Gallegos was still working there.
Additional facts are contained in this Court's opinion affirming defendant's convictions on his direct appeal in State v. Dempsey (Nov. 20, 1997), Cuyahoga App. No. 71479, unreported, reversed on a sentencing issue only in 83 Ohio St.3d 107 (1998).
On June 2, 1997, defendant filed his petition for post-conviction relief (R.C. 2953.21). The trial court dismissed the petition without a hearing and entered findings of fact and conclusions of law on May 5, 1999, from which this appeal was taken.
We will address defendant's assignments of error in the order asserted and together where it is appropriate for discussion.
 I. THE TRIAL COURT ERRED IN DISMISSING WITHOUT A HEARING BASED ON RES JUDICATA ALL OF THE COUNTS ALLEGED IN THE PETITION FOR POST-CONVICTION RELIEF.
 II. THE TRIAL COURT ERRED IN DISMISSING COUNT ONE OF PLAINTIFF'S PETITION FOR POST-CONVICTION RELIEF WITHOUT AN EVIDENTIARY HEARING WHERE THE EVIDENCE OUTSIDE THE TRIAL RECORD DEMONSTRATED THAT THE FAILURE TO GRANT A CONTINUANCE DEPRIVED THE PETITIONER OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL, DUE PROCESS, THE COMPULSORY PROCESS AND FAIR TRIAL PROVISIONS OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE APPLICABLE PROVISIONS OF THE OHIO CONSTITUTION.
 III. THE TRIAL COURT ERRED IN DISMISSING COUNT TWO OF PLAINTIFF'S PETITION FOR POST-CONVICTION RELIEF WITHOUT AN EVIDENTIARY HEARING WHERE THE EVIDENCE OUTSIDE THE TRIAL RECORD DEMONSTRATED THAT THE PETITIONER WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL AND DUE PROCESS AND HIS FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION BY THE FAILURE OF COUNSEL TO PROPERLY INVESTIGATE, INTERVIEW, LOCATE AND PRESENT THE TESTIMONY OF MATERIAL WITNESSES WHO WOULD CORROBORATE THE DEFENSE'S THEORY AND THE DEFENDANT'S TESTIMONY.
"According to the post conviction relief statute, a criminal defendant seeking to challenge his conviction through a petition for post conviction relief is not automatically entitled to a hearing." State v. Calhoun (1999), 86 Ohio St.3d 279, 282, citing State v. Cole (1982), 2 Ohio St.3d 112. The pivotal concern in determining whether to grant a hearing on a motion for post-conviction relief is whether there are substantive grounds for relief which would warrant a hearing based upon the petition, the supporting affidavits, and the files and records of the case. State v. Swortcheck (1995), 101 Ohio App.3d 770, 772; State v. Strutton (1988), 62 Ohio App.3d 248.
The post-conviction remedy statute, R.C. 2953.21(C), states in pertinent part:
 * * * Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. The court reporter's transcript, if ordered and certified by the court, shall be taxed as court costs. If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal.
Pursuant to R.C. 2953.21(C), the trial court dismissed defendant's post-conviction petition and issued findings of fact and conclusions of law on each issue raised in the petition. (Findings of Fact and Conclusions of Law filed May 5, 1999).
This Court stated the test to be applied in determining the necessity of a hearing in State v. Pariseau (Dec. 15, 1994), Cuyahoga App. No. 67496, unreported at 4-5:
 A petition for post-conviction relief may be dismissed without a hearing when the petitioner fails to submit with his petition evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief. State v. Jackson (1980), 64 Ohio St.2d 107. The test to be applied is "whether there are substantive grounds for relief that would warrant a hearing based upon the petition, the supporting affidavits and the files and records in the case." State v. Strutton (1988), 62 Ohio App.3d 248, 251. A petitioner satisfies his initial burden by submitting evidence outside the record sufficient to avoid dismissal. See State v. Williams (1991), 74 Ohio App.3d 686, 692.
We find, as did the trial court, that defendant's assignments of error are barred by the doctrine of res judicata. Because post-conviction petitions are quasi-civil, any claim that was or could have been raised at trial or on appeal is barred by the doctrine of res judicata. The Ohio Supreme Court has held:
 Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.
State v. Perry (1967), 10 Ohio St.2d 175, paragraph nine of the syllabus.
However, competent, relevant, and material evidence de hors the record may defeat the application of res judicata. State v. Lawson (1995), 103 Ohio App.3d 307. However, this evidence must demonstrate that the petitioner could not have appealed the constitutional claim by use of information found in the original record. Id.
Defendant states that he submitted ample evidence outside of the record that he was "drugged and transported from the Dollhouse to the Lorain Avenue building and abandoned after the arson was committed by Steve Gallegos and/or others." (Aplt's Brf. at 14). In support of his petition for post-conviction relief, defendant attached the affidavit of Kathryn Thomas (defendant's trial counsel); the affidavit of Stephanie Wyant (a dancer at the Dollhouse); the deposition testimony of John Yatson (Chief of the Arson Unit of the Cleveland Fire Department); the affidavit of Katherine Hill (a friend of defendant); the affidavit of Jesus Cruz (an investigator for the Cuyahoga County Public Defender's Office); the affidavit of Jean Tomusko (a friend of defendant who dated Steve Gallegos); the affidavit of Lisa Tomusko (daughter of Jean Tomusko); the deposition testimony of Julie Milano (owner of the Dollhouse); the deposition testimony of Andrew Segedy (owner of the Lorain Avenue building); and the affidavit of Thomas Tomusko (son of Jean Tomusko).
Defendant summarized the contents of the above testimony attached to his petition as follows:
 Mr. Segedy: [Owner of the Lorain Ave. building] He was threatened by a Mr. Gallo and Mr. Oritiz (sic) before the fire had occurred. There were threats of Mafia.
 Stephanie Wyant: [Former dancer at the Dollhouse] Recounts the evening of the fire, and confirms the presence of Jack Dempsey and Steve Gallegos at the Dollhouse, and the apparent drugging of Jack Dempsey by Steve Gallegos. Miss Wyant also discussed the later finding of the keys by Julie Milano at the Dollhouse, the description of which matched the keys of Jack Dempsey.
 Chief Yatson: Confirmed that Miss Wyant provided a statement to him.
 Julie Milano: [Owner of the Dollhouse] Found keys as noted above and spoke of the violent character of Steve Gallegos.
 Jean Tomusko: [Friend of defendant] Gallegos told her that he would harm Jack Dempsey after seeing Dempsey's picture at her house.
 Kathryn Hill: The keys described by Stephanie Wyant matched those of Jack Dempsey.
(Aplt's Brf. at 13-14).
As discussed above, in order to defeat the application of res judicata, defendant must present competent, relevant, and material evidence de hors the record that demonstrates that the defendant could not have raised these issues on direct appeal by use of information found in the original record. It is clear from the record before us that Mr. Segedy and Chief Yatson testified at defendant's trial. Regarding the other witnesses, they were known to defendant but trial counsel chose not to call them to testify. "[I]t is well established that counsel's decisions concerning which witnesses to call at trial fall within the realm of trial strategy and tactics and generally will not constitute ineffective assistance of counsel." State v. Gillespie (Mar. 9, 2000), Cuyahoga App. No. 75918, unreported, quoting State v. Smith (1996),115 Ohio App.3d 419, 426.
All of the above witnesses were known to defendant at the time of trial. Accordingly, we find that this evidence was available on direct appeal when defendant was represented by new counsel and was therefore not evidence de hors the record as defendant asserts.
Defendant asserts that the trial court erred in dismissing his petition for post-conviction relief without an evidentiary hearing where the evidence outside of the record demonstrated that his motion for a continuance should have been granted. We find that this issue was properly dismissed on res judicata grounds.
The decision whether or not to grant a motion for continuance is a matter within the discretion of the trial court. State v. Unger (1981), 67 Ohio St.2d 65. In Unger, the Ohio Supreme Court stated:
 The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion.
Id.at 67, citing Ungar v. Sarafite (1964), 376 U.S. 575. The term "abuse of discretion" connotes more than an error of law or judgment, it implies that the court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
The record reflects that the trial court's failure to grant the continuance in question was raised by the defendant and fully litigated on his direct appeal. It is well established that issues cannot be considered in post-conviction proceedings where they have already been fully litigated on direct appeal. State v. Perry (1967), 10 Ohio St.2d 175, paragraph seven of the syllabus. On direct appeal, this Court held that the trial court's failure to grant defendant's request for a continuance was not violative of the right to effective assistance of counsel, due process, the compulsory process and fair trial provisions of the Sixth andFourteenth Amendments to the U.S. Constitution. State v. Dempsey (Nov. 20, 1997), Cuyahoga App. No. 71479, unreported. Therefore, absent competent, relevant, and material evidence de hors the record that defendant could not have raised this issue on direct appeal, this claim is barred by res judicata.
On May 31, 1996, the defendant first filed a motion for continuance. Said motion was granted on June 5, 1996, with a new trial date set for August 12, 1996. As a result, defendant was given an additional two months to investigate and prepare for trial. On August 2, 1996, defendant filed another motion for continuance which the trial court denied. On the August 12, 1996 trial date, defense counsel orally requested a continuance on the basis that co-counsel was ill and that an allegedly exculpatory witness had just been made known to the defense. This Court addressed these very issues in the original direct appeal and found no abuse of discretion in the trial court's denial of the continuance. Dempsey, supra.
Defendant asserts that res judicata does not apply to this claim because he has presented new evidence to establish the trial court's error in denying the continuance. In support of this assertion, defendant relies on the affidavits of defense counsel Kathryn Thomas and investigator Jesus Cruz attached to his petition. In her May 30, 1997 affidavit, Ms. Thomas stated:
 On August 2, 1996, I filed a Motion for Continuance based on Mr. Cruz's having only met Jack Dempsey on July 29, 1996. Also, Mr. Cruz had a vacation planned and needed until September 23, 1996 to properly investigate the matter. Mr. Cruz's affidavit was attached to the Motion for a Continuance. I asserted in the motion that the continuance was necessary to provide the effective assistance of counsel.
(Thomas Aff. at q 11). Ms. Thomas attached to her August 2, 1996 motion for continuance, an affidavit from Mr. Cruz in which he stated:
 On July 22, 1996 Mr. Svekric left the Public Defender's Office for a job with the Mayor's office and he returned all of his case files. No significant work has been completed on [the Dempsey] file.
 On July 29, 1996 I met with the client and his counsel, Kathryn A. Thomas.
 Due to the nature of this case and the amount of documentation to review and witnesses to contact, I am unable to complete the investigation in time to allow the attorneys to prepare for trial.
 I have a scheduled vacation from August 19, 1996 to September 6, 1996. In my professional opinion, I need at least until September 23, 1996 to properly complete the criminal investigation in this matter.
The defendant attached a similar affidavit from Mr. Cruz in support of his petition for post-conviction relief in which Mr. Cruz stated:
 As a professional investigator, I respectfully submit there was insufficient time to locate and interview the witnesses and to investigate all of the circumstances surrounding the case. I signed an affidavit which was filed with the court when Kathryn Thomas submitted a Motion for a Continuance of the August 12, 1996 trial date.
(Cruz Aff. at q 11).
These affidavits do not constitute evidence de hors the record that was not in existence or available to defendant in time to support his direct appeal. These statements both involved Mr. Cruz's inability to thoroughly investigate the witnesses prior to trial. Furthermore, the August 2, 1996 motion for continuance with its supporting affidavit of Mr. Cruz are part of the trial record.
Because this evidence was known and available to defendant on direct appeal, it does not constitute evidence de hors the record to prevent the application of res judicata. Accordingly, the trial court correctly dismissed without a hearing on res judicata grounds defendant's claim that the trial court erred in not granting his motion for continuance.
Defendant also asserts that the trial court erred in dismissing his petition for post-conviction relief without an evidentiary hearing where the evidence outside of the record demonstrated that he was deprived of the effective assistance of counsel. We find that this issue was also properly dismissed by the trial court based on res judicata.
This Court described the standard of review to make a showing of ineffective assistance of counsel in Lakewood v. Town (1995),106 Ohio App.3d 521, 525-26:
 The standard of review for ineffective assistance of counsel requires a two-part test and is set forth in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. See, also, State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland at 687-688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. The defendant must also prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.
Furthermore, when determining whether counsel's performance was deficient "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Strickland v. Washington (1984), 466 U.S. 668, 689. A defendant's failure to satisfy either of the two Strickland tests is sufficient to dismiss the claim of ineffective assistance of counsel.
We find that the trial court correctly determined that res judicata also barred defendant's ineffective assistance claim. The Ohio Supreme Court has held that a petition for post-conviction relief alleging ineffective assistance of trial counsel may be dismissed without a hearing based on res judicata where the petitioner had new counsel on direct appeal and the claim of ineffective assistance of counsel could have been raised on direct appeal without resorting to evidence outside of the record. See State v. Lentz (1994), 70 Ohio St.3d 527, 530, citing State v. Cole (1982), 2 Ohio St.3d 112, at syllabus.
Defendant asserts that trial counsel was ineffective in failing to insure that key witnesses were contacted and investigated. Defendant asserts that trial counsel failed to pursue available material evidence that would have corroborated defendant's version of the events and the defense's theory that defendant was drugged and placed in the burning building.
As stated above, res judicata is a proper basis for dismissing a petition for post-conviction relief based on ineffective assistance of counsel when such claim was or could have been raised on direct appeal. The record reflects that defendant was represented by new counsel on his direct appeal. Furthermore, it is clear that defendant's claim of ineffective assistance of trial counsel could have been raised on direct appeal. Defendant points to several failures by trial counsel to investigate and pursue his defense. Even though defendant's evidence could arguably support a claim of ineffective assistance, all of these alleged failures were known at the time of trial and could have been raised on direct appeal based solely on the trial record. This evidence does not constitute evidence de hors the record as defendant asserts. Therefore, the trial court properly dismissed defendant's claims of ineffective assistance of trial counsel as barred by res judicata.
Assignments of Error I, II and III are overruled.
 IV. THE TRIAL COURT ERRED IN DISMISSING COUNT THREE OF PLAINTIFF'S PETITION FOR POST-CONVICTION RELIEF WITHOUT AN EVIDENTIARY HEARING WHERE THE EVIDENCE OUTSIDE THE TRIAL RECORD DEMONSTRATED THAT THE STATE'S FAILURE TO PROVIDE TIMELY EXCULPATORY INFORMATION WAS IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10
OF THE OHIO CONSTITUTION.
In his fourth assignment of error, defendant alternatively asserts that the State failed to provide exculpatory evidence to the defendant in violation of the United States and Ohio Constitutions. Specifically, defendant asserts that the State failed to provide the defense with information regarding Mr. Oriti's threats to shoot Mr. Segedy, Bill Gallo's threats to get the mafia after Mr. Segedy and to provide him with the statement of Stephanie Wyant.
First, this issue should have been raised on direct appeal and therefore, it is barred from consideration in this post-conviction proceeding. Secondly, even if this issue is properly before this Court, we find that the trial court did not abuse its discretion in dismissing it without a hearing.
Defendant relies on Brady v. Maryland (1963), 373 U.S. 83,83 S.Ct. 1194, 10 L.Ed.2d 215, in support of his claim. In Brady, the United States Supreme Court stated:
 The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt of punishment, irrespective of the good faith or bad faith of the prosecution.
Id. at 87. However, the mere possibility that non-disclosed information might have assisted the defense or might have affected the outcome of the trial does not establish "materiality" to create a constitutional violation. This Court in State v. Apanovitch (1995), 107 Ohio App.3d 82, 92, citing Kyles v. Whitley (1995),514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490, set forth a four-prong test to determine if evidence suppressed by the State is "material" as follows:
 First, favorable evidence is material, and constitutional error results from its suppression by the government if there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. Id., 514 U.S. at ___, 115 S.Ct. at 1566. A "`reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id.; see, also, State v. Johnston (1988), 39 Ohio St.3d 48, 529 N.E.2d 898, paragraph five of the syllabus. Second, a defendant may show a Brady violation by showing that the favorable evidence could reasonably be taken to "put the whole case in such a different light as to undermine confidence in the verdict." Id. Third, if the reviewing court should find constitutional error, there is no need for further harmless error review. Id. Fourth, the state's disclosure obligation turns on the cumulative effect of all suppressed evidence favorable to the defense, not only the evidence considered item by item. Id., 514 U.S. at ___, 115 S.Ct. at 1567, 131 L.Ed.2d at 507-508.
Defendant claims that "the statement of Mr. Segedy concerning Mr. Gallo and Mr. Oriti should have been disclosed earlier than Friday afternoon. Also, the state should have provided the statement of Stephanie Wyant to defense counsel." (Aplt's Brf. at 35-36). We find that the cumulative effect of these statements would not have changed the outcome of defendant's trial and therefore, were not "material" as to his guilt.
The record reflects that Mr. Segedy, the owner of the Lorain Avenue building, told the police that he was threatened by Mr. Gallo and Mr. Oriti on two separate occasions. Defendant claims that if this evidence was properly introduced to the jury, it would corroborate that someone else started the fire. It is undisputed that the State did not provide the defense with the statements of Mr. Segedy and Ms. Wyant until the Friday before trial. However, the record further reflects that the defense was aware of the threats made by Mr. Oriti and Mr. Gallo prior to trial. In her affidavit, Ms. Thomas also stated that on August 9, 1996, she was told by a prosecutor that Mr. Oriti had threatened to shoot Mr. Segedy and Mr. Gallo had threatened to get the Mafia after him. (Thomas Aff. at ¶ 12). Defendant's trial commenced on August 12, 1996.
We find that no Brady violation occurred in this case. "The Ohio Supreme Court has articulated clearly, however, that Brady applies only in situations where information known to the defense is discovered after trial." State v. Brown (1996), 112 Ohio App.3d 583,595, citing State v. Wickline (1990), 50 Ohio St.3d 114, 116. Therefore, because the information regarding Mr. Oriti and Mr. Gallo was revealed prior to trial, no Brady violation occurred.
Furthermore, Ms. Wyant stated in her affidavit that approximately one to two months after the fire, she met with the defendant at his request. (Wyant Aff. at ¶ 11). She further stated that "Mr. Dempsey took Sherrie and myself down to the Police Station and I told the police basically the same information that I am providing in this Affidavit." (Wyant Aff. at ¶ 12).
Based on this evidence, defendant was obviously aware of Ms. Wyant long before trial, had full knowledge of the information that was included in her statement and could have taken advantage of any exculpatory evidence known to her at trial. Accordingly, no Brady violation occurred and defendant cannot establish that he was prejudiced by the State's failure to provide the statement as there is no "reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different."
Assignment of Error IV is overruled.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ______________________ JAMES M. PORTER, JUDGE
O'DONNELL, P.J., and BLACKMON, J., CONCUR.